IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO


UNITED STATES OF AMERICA,

         **Plaintiff/Respondent,**

  vs.                                      **NO. 06CV939 RB/WDS**
                                                    **NO. 03CR1838 RB**


**RUPERT LENNON, JR.**

         **Defendant/Petitioner**


MAGISTRATE JUDGE'S PROPOSED
FINDINGS AND RECOMMENDED DISPOSITION[1]

      This is a Motion to Vacate, Set Aside, or Correct Sentence filed under 28 U.S.C. § 2255 by

Rupert Lennon Jr.  (Document No. 1)  Lennon is acting *pro se*.  Respondent filed a response in

opposition to the motion.  (Document No. 6)  Petitioner filed a reply to the government's response.

(Document No. 10)  The United States Magistrate Judge, having considered the arguments of the

parties, the record, relevant law, and being otherwise fully advised, finds the Motion should be

denied.  Because the issues are resolved on the pleadings, and the record establishes conclusively

that Lennon is not entitled to relief, an evidentiary hearing is not necessary.  28 U. S. C. §2255;

*Trice v. Ward* 196, F. 3d 1151, 1159 (10th Cir. 1999), cert. denied, 531 U. S. 835 (2000).  The court

---

[1]Within ten (10) days after a party is served with a copy of these findings and
recommendations, that party may, pursuant to 28 U.S.C. §636(b)(1), file written objections to
such findings and recommendations.  A party must file any objections with the Clerk of the U.S.
District Court within the ten-day period allowed if that party wants to have appellate review of
the findings and recommendations.  If no objections are filed, no appellate review will be
allowed.

makes the following findings and recommended disposition.

## CLAIMS

Lennon claims that he was denied effective assistance of counsel as guaranteed by the Sixth Amendment of the United States Constitution as a result of defense counsel's failure to adequately represent him during his criminal trial.  Specifically, he asserts ineffective assistance of counsel in relation to defense counsels' alleged: (1) inadequate trial preparation; (2) failure to adequately advise

Defendant about the plea offer; (3) failure to object to the drug quantity; and (4) failure to investigate and present mitigating factors at sentencing.

## FACTUAL AND PROCEDURAL BACKGROUND

On Monday morning, June 23, 2003, Lennon was driving his tractor trailer in Phoenix, Arizona when he received a call from a broker informing him that a load of mangos needed to be picked up in Nogales, Arizona. At approximately 1:00 PM, Lennon arrived at Farmer's Best in Nogales, where 20 pallets containing a total of 3,840 boxes of mangos were loaded into Lennon's truck. While Lennon did not participate in the loading, he did observe the loading process to ensure that none of the boxes were damaged. The bill of lading stated the mangos were loaded at 1:20 PM, were to be maintained at a temperature of forty-eight degrees and were to be transported to Wakefern Food Corporation in Elizabeth, New Jersey.

Thereafter, Lennon drove north to a truck station in Rio Rico, Arizona to weigh his truck. It took him approximately an hour to shift the weight in his truck to comply with the applicable state weight regulations.  Lennon then drove to a truck stop in Tucson, Arizona, arriving at approximately

5:00 PM.  On the way to Tucson, he received a call from another broker who asked Lennon whether he could transport 3-4 pallets weighing over 1,000 pounds.  Lennon informed the broker he could only transport 500-600 pounds because he was near the maximum allowable weight.  The broker informed him he would talk to the customer to see if it would accommodate Lennon's weight restrictions.

Lennon waited at the truck stop for the broker's call. At about 9:00 PM, the broker called and informed Lennon the customer was willing to reduce the load.  Lennon agreed to the transaction and the broker provided him with directions.  Lennon got lost on the way to the pick up.  Eventually, an individual met Lennon and led him to a loading dock.  Another man was waiting there with a forklift.  This man, who Lennon testified was "definitely drunk" and "talking a lot of garbage," had nine boxes on a pallet.  Pursuant to Lennon's direction, the man first removed two pallets of mangos from Lennon's truck, added the pallet with the nine boxes and then replaced the two pallets of mangos.  Lennon testified he told the man to load the truck in this manner so the trailer's doors would support the boxes of mangos, which were top heavy.  The nine boxes were sealed together and labeled.  The label indicated the boxes were being shipped by "AM Frozen Food Specialty, Inc." in Tucson to "Omega Produce Co., Lehigh Valley Produce Market" in Lehigh Valley, Pennsylvania.  According to the bill of lading, which Lennon signed, the boxes contained "fronzen [sic] exotic Japanese turtle tempura."

Lennon claims he was unconcerned that he was transporting frozen seafood and fresh produce together in a 48 degree trailer across the county.  Although Lennon counted the boxes, he apparently did not open them, stating it was his practice and industry custom not to open his cargo.  He testified he was going to be paid $ 1,200 to transport the tempura.  Lieutenant Charles Cox of

the New Mexico Department of Public Safety, Motor Transportation Division, and a former truck driver, testified this amount was "quite expensive."

Once the nine boxes were loaded, Lennon locked the trailer, sealed its doors with a plastic seal and drove back to the truck stop in Tucson to weigh his truck. At approximately 10:30 PM, he left Tucson and drove into New Mexico. He arrived at a weigh station in Lordsburg, New Mexico, between 1-2:00 AM, where he slept. The next morning, he refueled the truck, ate and completed his logbook for the previous day. He did not fill it out accurately. The logbook showed Lennon was driving to Tucson when in fact he was weighing his truck in Rio Rico. It also failed to indicate that he picked up the second load. Moreover, the logbook states he arrived in Las Cruces at 11:00 PM, when in fact he had left Tucson at 10:30 PM and arrived in Lordsburg between 1-2:00 AM.

After completing his logbook, Lennon drove east until he arrived at an inspection checkpoint near Alamogordo, New Mexico. At the checkpoint, he was greeted by Agent Ricardo Sanchez, Jr., of the United States Border Patrol. During this initial encounter, Agent Sanchez asked him about his citizenship, what he was hauling, where he was coming from and where he was going. Lennon, who is a legal resident but not a United States citizen, stated he was a United States citizen and was hauling mangos from Nogales, Arizona, to New Jersey. Lennon provided Agent Sanchez with the bill of lading for the mango load. Agent Sanchez testified Lennon "became increasingly nervous, kind of shaking when he was handing me the [bill of lading], began to stutter a little bit and [] began speaking very rapidly." Agent Sanchez then asked Lennon if the load was locked or sealed. Lennon responded it was locked and sealed. Agent Sanchez testified this raised his suspicions because in his experience, trucks hauling produce are normally not sealed. The bill of lading did not indicate that the load was sealed.

4

Agent Sanchez then obtained Lennon's permission to search the truck and to perform a dog sniff on the vehicle. The dog alerted to the rear of the trailer. Agent Sanchez informed Lennon that agents would be inspecting the inside of the trailer and directed him to unlock the trailer. Agent Sanchez testified Lennon appeared "puzzled and confused" but proceeded to unlock the trailer. Agent Sanchez noticed Lennon's hand was shaking and "it took him awhile to get the key inside the lock to unlock it." Lennon also broke the plastic seal with his hand, retained the seal and stepped back from the trailer.

Agent Sanchez immediately noticed the two pallets of mangos. He then observed several boxes wrapped in cellophane, which did not match the rest of the load, behind the mangos. Agent Sanchez, with the assistance of Agent Humberto Valeriano, inspected the boxes. The boxes contained large bundles wrapped in cellophane. The agents asked Lennon what the bundles were, and Lennon stated he did not know. One of the bundles was opened and the substance inside field-tested positive for marijuana. The agents arrested Lennon.

Thereafter, Agents Sanchez, Valeriano and Hugo Gonzalez conducted a search of Lennon's truck. They found Lennon's logbook and the bill of lading for the second load. Sometime later, Agent Sanchez noticed that the plastic seal that had been removed from the trailer's doors was missing. Agent Gonzalez searched for the seal, discovering it on the other side of a barbed wire fence, approximately fifteen feet behind where Lennon had been standing during the search.

A total of 361 pounds (147.38 kilograms) of marijuana was seized from Lennon's truck. Lt. Cox estimated its value at $ 360,000. Upon further investigation, agents learned the company to which the second load was addressed (Omega Produce) did not exist. They also discovered the address listed for the shipper (AM Frozen Food Speciality, Lehigh Valley Produce Market) actually

belonged to Merit Foods, LLC, d/b/a Merit Marketing, LLC.

On September 17, 2003, Lennon was indicted for possession with intent to distribute 100 kilograms and more of marijuana in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B) and 18 U.S.C. § 2. Lennon proceeded to trial. At trial, Lennon testified, essentially denying any knowledge that the nine boxes contained marijuana. The jury found Lennon guilty. On March 9, 2004, Lennon was sentenced to seventy months imprisonment.

The defendant filed a timely notice of appeal on April 8, 2003. The appeal was denied by the Tenth Circuit Court of Appeals on June 16, 2004. The defendant then filed a Petition for a Writ of Certiorari which was denied on November 1, 2004. *Haynes v. United States*, 125 S.Ct. 446 (2004). Subsequently, the defendant filed the instant §2255 Motion alleging his counsel was ineffective for the reasons identified above.

## STANDARD OF REVIEW

Since Lennon is in federal custody pursuant to the judgment of a federal court, 28 U.S.C. §2255 applies. A district court may grant relief under § 2255 only if it determines that "the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack." 28 U.S.C. § 2255. Petitioner's claim of ineffective assistance of counsel, if proved, would constitute a denial or infringement of his constitutional rights.

## INEFFECTIVE ASSISTANCE OF COUNSEL

Petitioner's allegations are correctly styled as an ineffective assistance of counsel claim. The merits of an ineffective counsel claim are squarely governed by *Strickland v. Washington*, 466 U.S.

668, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984).   In *Strickland*, 466 U.S. at 686-87, the Supreme

Court devised a two-step inquiry to determine whether a lawyer's poor performance deprived an

accused of his Sixth Amendment right to assistance of counsel.  In order to establish an ineffective

assistance claim, the petitioner must show (1) "that counsel's performance was deficient," and (2)

"that the deficient performance prejudiced [his] defense."  *Foster v. Ward*, 182 F.3d 1177, 1184

(10th Cir. 1999), cert. denied, 529 U.S. 1027 (2000).  To establish deficient performance, Lennon

must show that his attorney made "errors so serious that counsel was not functioning as the counsel

guaranteed the defendant by the Sixth Amendment," *Williams v. Taylor*, 529 U.S. 362, 390, 146 L.

Ed. 2d 389, 120 S. Ct. 1495 (2000), quoting *Strickland*, 466 U.S. at 687; and that his legal

"representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688.

To establish prejudice, Lennon "must show that there is a reasonable probability that, but for

counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694.

A reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Id.*

The prejudice component focuses on the question whether counsel's deficient performance

renders the result of the trial unreliable or the proceeding fundamentally unfair. *Williams*, 529 U.S.

at 393, FN17, citing *Strickland* 466 U.S. at 687, and *Kimmelman v. Morrison*, 477 U.S. 365, 374,

393, 91 L. Ed. 2d 305, 106 S. Ct. 2574 (1986); see also *Lockhart v. Fretwell*, 506 U.S. 364, 369, 122

L. Ed. 2d 180, 113 S. Ct. 838 (1993).  It is entirely appropriate for a habeas court to analyze the

prejudice prong first and exclusively, if that is the easier course.  *E.g. Scoggin v. Kaiser*, 186 F.3d

1203, 1207 (10th Cir. 1999).

**A.  Inadequate Trial Preparation**

Petitioner first alleges that his counsel's pretrial preparation was inadequate.  Petitioner

points to several different areas of preparation:  (1) Petitioner claims that his counsel only met with

him once before trial;  (2) Petitioner claims that his counsel failed to hire a private investigator;  (3)

Petitioner claims that counsel did not familiarize himself with the facts of the case or the details of

the trucking business;  (4) Petitioner claims that his counsel failed to obtain background information

on the prosecution's witnesses; (5) Petitioner claims that his counsel failed to call enough witnesses

or hire an expert witness;  (6) Petitioner claims that his counsel failed to object to evidence offered

by the prosecution.

Petitioner, for example, claims that his counsel was unprepared to challenge the testimony

of Eddie Federico, the loading dock foreman from Farmer's Best.  Petitioner picked up his load of

mangos at Farmer's Best, and Mr. Federico testified regarding the procedures used to load produce

onto trucks.  Mr. Federico did not remember either Petitioner or the specific loading of Petitioner's

truck, but testified that truck drivers were typically present when produce was loaded as they had

a vested interest in assuring the amount and the general condition of the cargo.  Petitioner's counsel

did not cross examine Mr. Federico.

Petitioner, however, has not pointed to anything said by Mr. Federico that was inaccurate,

untrue, or otherwise subject to cross examination.  Petitioner appears to question Mr. Federico's

testimony that drivers typically stood at the trailer doors to watch their vehicle being loaded.

However, Petitioner testified himself that he walked around during the loading at Farmer's Best to

make sure there were no damaged boxes. Tr. 139, 191.  He further testified that, while he would not

open a box, if he could look into a box of produce he would do so to check to make sure the produce

was fresh.  Tr. 140.  In other words, Petitioner's own testimony corroborated that of Mr. Federico,

and Petitioner has not offered any purported line of cross examination that his counsel could have,

or should have, followed.

In the absence of an offer of proof regarding what testimony Petitioner's counsel should have elicited from Mr. Federico, any finding of prejudice on this claim is impossible. *See Coleman v. Brown*, 802 F.2d 1227, 1234 (10th Cir.1986); *United States ex rel. Cross v. DeRobertis*, 811 F.2d 1008, 1016 (7th Cir.1987) ("The focus of the inquiry must be on what information would have been obtained from such an investigation and whether such information, assuming its admissibility in court, would have produced a different result.").

Petitioner next claims that his counsel was ineffective because he failed to hire a private investigator. Petitioner alleges that a private investigator could have located the individuals who loaded the marijuana onto his truck. However, Petitioner fails to note that he was the only one who could have provided the information to start such an investigation, and he failed to do so. Petitioner testified that he was notified to pick up the load of mangos by the Gen-Pro Brokerage. He claims another brokerage called to notify him of the second pickup, purported to be frozen turtle tempura. Petitioner never identified that second broker, claiming he did not remember the name of the broker and could not ascertain it from his phone records. Defendant also testified that he had no idea where he picked up the second load of alleged frozen seafood. While that may be, Petitioner cannot disparage his counsel for not hiring a private investigator when Petitioner himself could not provide any information with which the investigator could have worked. Petitioner has not identified a single thing the investigator could have done, or how he was supposed to do it. As above, in the absence of such an offer of proof, any finding of prejudice on this claim is not possible.

Next, Petitioner asserts a number of what could be called "weight of the evidence" claims. He notes that the prosecution called more witnesses and presented more numerous exhibits than the

defense, none of which were objected to by his counsel, and called expert witnesses while the

defense did not call an expert witness.  Further, Petitioner faults his counsel for not digging up

derogatory background information about the prosecution witnesses, the better to impeach them

with.   Again, Petitioner has made no showing that there was such derogatory background

information, has failed to identify a single defense witness who should have been called, has not

identified any evidence to which his attorney should have objected,[2] and has not identified an expert

witness who should have been called as a witness, or identified the subject he would be offered as

an expert on, or what testimony he would have offered.  Again, any finding of prejudice on this

claim is not possible.

Finally, Petitioner asserts that his counsel only met with him once, was unprepared for trial,

and knew nothing about the facts of the case or the trucking business.  In its answer to the petition,

the Respondent included an affidavit from Petitioner's trial counsel, Johnny L. McCray, Jr.,

asserting that he met with Petitioner on July 7, 2003; August 12, 2003 (3 hours); September 10,

2003; and November 19, 2003.  Additionally, Mr. McCray asserts that he spoke on the telephone

with Mr. Lennon on numerous other occasions.  Mr. McCray attached correspondence documenting

the fact that he sent the government's proposed plea agreement to Petitioner, that Petitioner

responded in writing that he was unwilling to accept the plea agreement, and the he conveyed that

information to the prosecutor in a letter, copied to Petitioner, in which he stated that he had met with

his client and discussed the plea agreement in "great detail."  Mr. McCray also provided a copy of

a second letter to Petitioner, in which he discussed ongoing discovery, invited Petitioner to contact

---

[2]The Petitioner's objection to his counsel's stipulation to the amount of marijuana is
addressed separately.

10

him to discuss the discovery, and reiterated his request to Petitioner to determine the identification of the broker who had directed the pickup of the second load.

Furthermore, the Court has reviewed the trial transcript, paying particular attention to Mr. McCray's cross examination of the government's witnesses, and his direct examination of Petitioner himself. It is apparent to the Court that Mr. McCray was intimately familiar with the facts of the case and conducted thorough cross examinations of the prosecution witnesses. Such cross examinations could not have been conducted by an attorney who had met only once with his client and never familiarized himself with the facts of the case or the operation of a trucking business. In addition, defense counsel put Petitioner on the stand and led him through a thorough direct examination. Again, this could not have been done had counsel not prepared himself for trial. Finally, the Court has reviewed the affidavit of Jess R. Lilley, Esq., local counsel who assisted Mr. McCray at trial. Mr. Lilley was present for trial, helped Mr. McCray with trial strategy, and had minor involvement with the trial. Mr. Lilley testified in his affidavit that he at no time saw Mr. McCray unprepared.

The Court finds Petitioner's bare assertions of unpreparedness on the part of Mr. McCray utterly lacking in credibility and thoroughly contradicted by the record. Petitioner's suggestion that he met Mr. McCray only once and never discussed anything of substance with him is so transparently false that the Court has difficulty concluding that it was offered in anything other than bad faith. Petitioner's argument is not well taken and his petition for habeas corpus on this ground should be denied.

**B.  Alleged Failure to Properly Advise Regarding the Plea Agreement**

Petitioner alleges that his attorney was ineffective in advising him about the relative merits

of the plea agreement offered by the prosecution.  There are several documents in the file that are relevant to consideration of Petitioner's argument.  The first is a letter from Mr. McCray to Petitioner, dated July 11, 2003.  The letter addresses a number of issues, but enclosed the proposed plea agreement from the prosecutor.  Mr. McCray advised Petitioner that they would have to "meet and discuss the significance and effect of accepting" the plea offer, and advised that he would "explain in great detail the strengths and weaknesses of your case as well as the quality of the evidence the Government has against you."

Evidently Petitioner did meet with Mr. McCray, because he wrote and signed a letter to Mr. McCray after the meeting which reads as follows:

> Thank you for meeting with me to go over the plea agreement offered by the state attorney.  I took everything we talked about into consideration and discussed it with my wife and my parents.  However, I decided to reject the offer, because I would have to plea guilty and I am completely innocent of the charges against me.

The third letter is from Mr. McCray to the federal prosecutor communicating Petitioner's unwillingness to accept the proposed plea bargain.  According to Mr. McCray, Petitioner was unwilling to plead guilty because he was "completely innocent" and because of his concern that a guilty plea would result in adverse immigration consequences.  According to Mr. McCray's affidavit, Petitioner was very reluctant to enter a plea that would likely result in his deportation while his wife and family remained in the United States.

As an initial matter, "[t]he decision of whether to accept a plea agreement lies ultimately with the defendant and cannot serve as a basis for an ineffective assistance of counsel claim." *United States v. Lazcano-Villalobos*, 33 F. App'x 927, 928 (10th Cir. 2002).  But even if that were not the case, Petitioner has not come close to establishing that his defense counsel's representation fell "below an objective standard of reasonableness."  Strickland v. Washington, 466 U.S. 668, 690

(1984).  Mr. McCray made it very clear in his initial letter to Petitioner that he would not tell Petitioner whether to accept or reject the plea agreement.  It is apparent from Petitioner's own letter that, following a lengthy discussion with counsel, he returned to his family to discuss the matter further and make his ultimate decision.  Petitioner's argument is not well taken and his petition for habeas corpus on this ground should be denied.

## C.  Stipulation to the Amount of Marijuana

Petitioner alleges that his attorney was ineffective when he stipulated to the amount of marijuana found in the trailer of Petitioner's truck.  It is not exactly clear what Petitioner is suggesting, however he seems to argue that had the prosecutor been forced to introduce evidence of the amount of marijuana, cross examination might have revealed flaws in the chain of custody or errors in computation of the amount of marijuana.  Again, Petitioner's arguments amount to mere speculation.  Petitioner points to no actual problem with the chain of custody or the weight of marijuana.  As defense counsel points out in his affidavit, the truck carried 164 kg of marijuana, which for sentencing purposes was nearly in the middle of the 100 kg-400 kg range.

Further, Defense counsel's willingness to stipulate appears to be  a "matter of prudent trial strategy," and there is nothing in the record to indicate that Petitioner objected to the strategy at the time.  Hawkins v. Hannigan,185 F.3d 1146, 1152 (10th Cir. 1999).  To the contrary, defense counsel notes that Petitioner signed off on the stipulation.  Counsel's decision cannot be said to fall "below an objective standard of reasonableness." Strickland v. Washington, 466 U.S. 668, 690 (1984).  The Court also rejects Petitioner's argument that his defense was somehow prejudiced by the admission of the evidence via stipulation rather than by an offer of proof through testimony of another government witness. Petitioner offers no proof to support this bare conclusion. To the contrary, it

appears to the Court that defense counsel's trial strategy, while ultimately unsuccessful, was fundamentally sound. Petitioner's argument regarding his counsel's decision to stipulate to the amount of marijuana found in the truck is not well taken and his petition for habeas corpus on this ground should be denied.

**D. Representation at Sentencing**

Finally, Petitioner argues that the sentencing court would have given him a lower sentence had defense counsel presented mitigating circumstances at his sentencing hearing. However, Petitioner identifies no mitigating circumstances that were not presented to the sentencing court, either through testimony or through the Pre-Sentence Report (PSR). While Petitioner suggests that there were additional mitigating circumstances that were not presented to the sentencing court, he does not link these unidentified mitigating circumstances to a lesser sentence pursuant to the sentencing guidelines. Defense counsel *did* present mitigating factors at sentencing through the testimony of Petitioner, Petitioner's pastor, and Petitioner's childhood school teacher who all spoke about how Petitioner is a good husband, son, and father, who regularly attends church. In addition, the PSR detailed Petitioner's personal characteristics, personal and family information, education, and employment history. It also detailed his criminal history that included a 1994 conviction for Grand Theft, and a 1995 conviction for Burglary. None of the mitigating factors warranted a departure or variance from the guideline range of 70-87 months. Petitioner was sentenced to 70 months, the bottom of the sentencing guidelines range.

The sentencing court was sympathetic to Defendant's situation, particularly the fact that his minor children would be physically without their father while he was incarcerated, but there did not exist any mitigating factors to warrant either a downward departure from the guidelines or a sentence

variance pursuant to 18 U.S.C. § 3553, and Defendant has failed to identify any specific factors that would have likely resulted in a lesser sentence. Absent such a showing, Defendant cannot show ineffective assistance of counsel. *U.S. v. Solis*, 3 Fed.Appx.834 (10th Cir.2001) (absent showing that any of the actions defendant contended his counsel should have undertaken at sentencing would have been successful in reducing his sentence, there was no prejudice, and thus counsel was not ineffective); *U.S. v. Sanders*, 372 F.3d 1183 (10th Cir.2004) (counsel's performance in failing to argue for downward departure in defendant's sentence for possession of firearm during drug trafficking offense, and possession with intent to distribute methamphetamine, was not deficient, as required to support claim for ineffective assistance of counsel; defendant asserted no ground on which counsel could have argued for downward departure).  Petitioner's argument is not well taken and his petition for habeas corpus on this ground should be denied.

**E.  Conclusion**

To show his counsel was constitutionally deficient, a defendant must demonstrate that his counsel's representation fell below an objective standard of reasonableness.  Miles v. Dorsey, 61 F.3d 1459, 1474 (10th Cir. 1995) (quoting Strickland, 466 U.S. at 688).   A defense attorney is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.   Strickland, 466 U.S. at 690.   As noted above, the Court has reviewed the court record and the entire trial transcript and finds that defense counsel was prepared for trial, vigorously cross examined the prosecution's witnesses, had a clear understanding of the facts of the case, and had a cogent, coherent defense strategy.

## DENIAL OF EVIDENTIARY HEARING

Petitioner has the burden of establishing the need for an evidentiary hearing. *Birt v. Montgomery*, 725 F.2d 587, 591 (11th Cir. 1984)  Under §2255, there is a right to an evidentiary hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief."  28 U.S.C. §2255;  *see also, United States v. Marr*, 856 F.2d 1471, 1472 (10th Cir. 1988)  A hearing is not required when a defendant's allegations of fact supporting his or her claims are conclusory and unsupported by the record, are shown to be meritless, or are "affirmatively contradicted" by the files and record.  *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977)  An evidentiary hearing on a claim of ineffective assistance of counsel is required only if the factual allegations, if true, would meet both prongs of the *Strickland* test.

For the reasons stated above, the court finds that Petitioner has not made a colorable showing that his counsel was inadequate in any way, let alone that his performance fell below an objective standard of reasonableness.  Furthermore, the Court finds that Petitioner's arguments were conclusory, meritless, and "affirmatively contradicted" by the record.  Accordingly, he can meet neither prong of the *Strickland* test and an evidentiary hearing is not necessary.

## RECOMMENDED DISPOSITION

The court recommends that Lennon's Motion Pursuant to 28 U. S. C. §2255 to Vacate, Set Aside, or Correct a Sentence by a Person in Federal Custody be DISMISSED with prejudice.  Timely objections to the foregoing may be made pursuant to 28 U. S. C. § 636(b)(1)(C).  Within ten days after a party is served with a copy of these proposed findings and recommendations that party may, pursuant to §636(b)(1)(C), file written objections to such proposed findings and recommendation with the Clerk of the United States District Court, 333 Lomas Blvd. NW, Albuquerque, NM 87102. A party

must file any objections within the ten day period allowed if that party wants to have appellate review

of the proposed findings and recommendation. If no objections are filed, no appellate review will be

allowed.

 

 

**W. DANIEL SCHNEIDER**
**United States Magistrate Judge**